549 S.E.2d 657

**Deborah H. COBB, Plaintiff Below, Appellant,**

v.

**E.I. duPONT deNEMOURS & COMPANY, a Delaware Corporation, and Diana Doran, Benefits Administrator, Defendants Below, Appellees.**

No. 26113.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1999.

Decided Oct. 8, 1999.

Roger D. Forman, David S. Skeen, South Charleston, for Appellant.

David B. Thomas, Paula Durst Gillis, Spilman Thomas & Battle, Charleston, Raymond Michael Ripple, Donna L. Goodman, Wilmington, DE, for Appellees.

PER CURIAM.

Deborah H. Cobb, plaintiff/appellant, (hereinafter referred to as "Ms. Cobb") appeals the Circuit Court's ruling regarding her fraudulent misrepresentation action against her former employer, E.I. duPont deNemours & Company and Diana Doran (hereinafter collectively referred to as "duPont"), as a result of her efforts to obtain workers' compensation benefits. The circuit court concluded that no material issues of fact were in dispute and granted summary judgment to duPont. We agree and therefore affirm the circuit court's ruling.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Ms. Cobb began her employment with duPont in 1976, at its Belle, West Virginia plant. She was employed as a clerk at duPont's Shipping and Transportation office. On September 15, 1994, Ms. Cobb voluntarily ended her employment with duPont. Ms. Cobb opted to leave her employment under duPont's Career Transition Program/Temporary Pension System.[1]

On March 15, 1995, Ms. Cobb filed a claim for workers' compensation benefits. Ms. Cobb alleged in her worker's compensation claim that she suffered asthma, hypertension,

---

1. Under this program Ms. Cobb received a lump sum payment of approximately nine months pay.

immune systems deficiency and stress disorder, due to exposure to heavy concentrations of chemical dusts, soot and powders. Ms. Cobb's workers' compensation claim was processed by Mary Parsons, a claims analyst for the Workers' Compensation Division. Consistent with regular procedures followed at the workers' compensation office, Ms. Parsons requested duPont complete and submit the employer's section of Ms. Cobb's workers' compensation claim form.[2] Also, consistent with the workers' compensation internal procedures, Ms. Parsons requested that duPont submit copies of its air monitoring records at the job site where Ms. Cobb worked. On April 24, 1995, duPont faxed to Ms. Parsons a letter regarding its air monitoring, along with the air monitoring results.[3] After receiving all requested information from duPont, and after reviewing all of the evidence submitted by Ms. Cobb, Ms. Parsons made the following entry in her file log on April 25, 1995:

> Received air checks from duPont. I feel I can reject on this and claimant numerous

other health problems as not related to the job. Medical reports do not specifically state claimant's problems are a direct result of employment and emphasis is directed to claimant's multiple physical non-work related problems. I do not feel claimant's work environment is the cause of claimant's problems, and I am, therefore, rejecting the claim as not in the course of or resulting from employment. Not an occupational disease nor an occupational injury.

On April 26, 1995, Ms. Cobb's workers' compensation claim was officially denied by the Workers' Compensation Division.[4]

Thereafter, Ms. Cobb protested the denial of her claim to the Workers' Compensation Office of Judges (hereinafter referred to as "OOJ"). While the workers' compensation case was pending before the OOJ, Ms. Cobb filed the instant action in the Circuit Court of Kanawha County on January 31, 1997.[5] The basis of Ms. Cobb's action in the circuit court was the allegation that duPont made fraudulent misrepresentations to workers'

---

**2.** The following appeared as an attachment submitted by duPont when it completed the employer's section of Ms. Cobb's claim form:

> 7. Building was renovated more than 3 years ago. No medical documentation of illness or problems from stress or chemical exposure due to work environment prior to 9/15/94. Medical documentation provided does not relate condition was due to work environment 8. Air monitoring indicates that area is in compliance with Environmental Regulations. Mrs. Cobb left the Company under the CTP/TPS Program that was being offered to our employees to terminate their employment on November 30, 1994 under an involuntary termination status to continue a job for another Belle Plant person who would otherwise be excess. She did not leave under any type of Medical retirement.

**3.** DuPont sent a cover letter with its report on air monitoring. It read:

> The enclosed records document air monitoring performed in 1989 as a result of employee concerns. The sampling revealed trace elements of exhaust fumes. Despite the fact, imminent actions were taken to alleviate employees concerns.
>
> The claimant in this instance did not complain before or since the monitoring was performed in 1989.
>
> It is the employer's position that there was no harmful exposure in this or related cases. If it is determined that a harmful exposure

occurred, it is the employer's position that the actions taken in 1989 corrected the situation.

> There have been no subsequent exposures and any claim filed at this late date is untimely.

**4.** Ms. Cobb filed an action alleging fraud and other theories of liability against duPont on July 28, 1995, in circuit court. That case was removed to the United States District Court for the Southern District of West Virginia. Ms. Cobb voluntarily dismissed her fraud claim from the case once it was removed to federal court. Eventually, the Federal District Court granted duPont summary judgment on the remaining claims. A pro se appeal by Ms. Cobb was unsuccessful. *See Cobb v. E.I. duPont deNemours & Co.*, 153 F.3d 719 (4th Cir.1998), *cert denied*, 525 U.S. 1171, 119 S.Ct. 1096, 143 L.Ed.2d 96 (1999).

**5.** The OOJ issued an order on June 6, 1997, finding Ms. Cobb's asthma claim was work-related and therefore a compensable disease. The OOJ found that all other health complaints by Ms. Cobb were not work-related. The OOJ decision was appealed to the Workers' Compensation Appeal Board by Ms. Cobb and duPont. The Appeal Board issued an order dated March 31, 1998, reversing the OOJ's compensability determination and holding that Ms. Cobb's asthma was not work-related. Thereafter, Ms. Cobb filed a petition before this Court seeking reversal of the Appeal Board. Her petition is currently pending before the Court. *See Cobb v. WCD and E.I. duPont*, No. 981272.

compensation which precluded Ms. Cobb from receiving workers' compensation benefits. After a period of discovery, duPont moved for summary judgment. By order dated October 22, 1998, the circuit court granted summary judgment in favor of duPont. Ms. Cobb now appeals the circuit court's October 22, 1998, order.

## II.

## STANDARD OF REVIEW

■ This Court has held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We have made clear that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter*, 192 W.Va. 189, 451 S.E.2d 755.

We have also indicated that "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of material fact and not how that issue should be determined." Syl. pt. 5, *Aetna Cas.*, 148 W.Va. 160, 133 S.E.2d 770. Moreover, we have explained that:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that

has the capacity to sway the outcome of the litigation under the applicable law.

Syl. pt. 5, *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995).

All reasonable doubts regarding the evidence must be resolved in favor of the non-moving party. "A party who moves for summary judgment has the burden of showing that there is no genuine issue of material fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. pt. 6, *Aetna Cas.*, 148 W.Va. 160, 133 S.E.2d 770. In order for summary judgment to be proper, the movant must demonstrate that there is no evidence to support the non-movant's case and "that the evidence is so one-sided that the movant must prevail as a matter of law." *Tolliver v. The Kroger Co.*, 201 W.Va. 509, 513, 498 S.E.2d 702, 706 (1997). Applying this standard of review to the instant case, we will examine the facts and application of the law to determine whether there is any genuine issue of fact to be tried.

## III.

## DISCUSSION

### A. Application of Summary Judgment to a Persinger Cause of Action

■ In syllabus point 4 of *Persinger v. Peabody Coal Co.*, 196 W.Va. 707, 474 S.E.2d 887 (1996), this Court articulated the standard for pleading and proving a workers' compensation fraud action:

> In order for a plaintiff employee to prevail on the narrowly construed cause of action by the employee against an employer for fraudulent misrepresentation concerning the employee's workers' compensation claim, the employee must (1) plead his or her claim with particularity, specifically identifying the facts and circumstances that constitute the fraudulent misrepresentation, and (2) prove by clear and convincing evidence all essential elements of the claim, including the injury resulting from the fraudulent conduct. A plaintiff employee is not entitled to recover unless the evidence at trial is persuasive enough for both the judge and jury to find sub-

stantial, outrageous and reprehensible conduct which falls outside of the permissible boundary of protected behavior under the statute. If the pleadings or evidence adduced is insufficient to establish either of the two factors stated above, the trial court may dismiss the action pursuant to Rule 12(b), Rule 56 or Rule 50 of the West Virginia Rules of Civil Procedure.

▮▮▮ This Court has indicated that "[t]he essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737[, 738] (1927)." Syl. pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981). A plaintiff need not show that he or she personally relied upon the fraudulent act to succeed in a *Persinger* cause of action. Instead, the material and false reliance element in a *Persinger* action refers to the party to whom an employer conveyed false information. So, in this instance, Ms. Cobb alleges that workers' compensation was provided material and false information upon which it relied to deny her workers' compensation benefits.

### B. No Factual Dispute Existed as to Whether the Information Conveyed by DuPont to Ms. Parsons was False

▮▮▮ To support her claim, Ms. Cobb contends that a material issue of fact exists as to whether the information conveyed by duPont to Ms. Parsons was false. The circuit court ruled that Ms. Cobb "cannot prove that the statements alleged to be false or fraudulent are indeed false." The relevant communication conveyed by duPont to Ms. Parsons, which Ms. Cobb claims to be false, involved air monitoring samples. Ms. Cobb contends, without any evidence whatsoever to support the contention, that the air monitoring samples were false or misleading.

Assuming arguendo, that the air monitoring samples were misleading, Ms. Cobb failed to show that Ms. Parsons relied on the air monitoring samples when making her decision to reject the claim. The circuit court's order addressed the critical issue of reliance as follows:

> Plaintiff cannot prove reliance, a necessary element of fraudulent misrepresentation. Mary Parsons, a Claims Analyst 2 for Workers' Compensation, testified in deposition that she made the decision to deny plaintiff's workers' compensation claim based on the plaintiff's medical evidence. At the time of her denial, Ms. Parsons made a contemporaneous log note which corroborates her deposition testimony. Plaintiff argues that Ms. Parsons' notes prove otherwise, and that the "defendant friendly" Ms. Parsons is not being truthful. Plaintiff's counsel, however, points to no evidence to establish facts at issue on the element of reliance, although requested by the Court to do so during oral argument. Plaintiff's counsel simply asserts that Ms. Parsons is not being truthful. This does not meet the requisite burden that plaintiff bears once a motion for summary judgment has been filed.

Ms. Cobb contends that because Ms. Parson's log notes suggested reliance on the air monitoring samples, a material issue of dispute exists. In this regard, we fail to see any material factual dispute. It is quite clear to this Court, as it was to the circuit court, that Ms. Parsons clarified her log note by stating that she did not rely on the air monitoring samples. In fact, Ms. Parson's log entry on April 25, 1995, simply documents that she received the air checks from duPont the previous day, April 24, 1995. During her deposition, Ms. Parsons confirmed that fact by testifying that she relied on the medical reports submitted by Ms. Cobb.[6] Despite the circuit court's repeated request that Ms. Cobb identify some evidence that Ms. Par-

---

**6.** Consistent with her notation in the activity log on April 25, 1995, Ms. Parsons testified at her deposition that she relied upon the medical evidence submitted by Ms. Cobb to deny her claim:

[Parsons]
A. Basically the medical information that I had was what I was going by.

[Skeen]
Q. The medical information from Dr. Kostenko and Dr. Rasmussen?
A. Yes.
The medical information upon which Ms. Parsons relied was submitted by Ms. Cobb. In fact, Ms. Cobb's own treating physicians, Dr. Kosten-

sons relied upon anything other than the medical evidence submitted by Ms. Cobb, or that Ms. Parsons had not truthfully testified, Ms. Cobb could identify no such evidence. Therefore, Judge Berger properly ruled that no dispute existed on the issue.[7]

## IV.

## CONCLUSION

In view of the forgoing, we conclude that the circuit court properly granted summary judgment to duPont.

Affirmed.

RISOVICH, J., sitting by temporary assignment.

McGRAW, J., and RISOVICH, J., sitting by temporary assignment, dissent.

ko and Dr. Rasmussen specifically stated that they could not establish a medical relationship between the claimant's bronchial asthma and her workplace.

7. Because Ms. Cobb cannot establish a factual dispute on the issue of reliance, we need not analyze the damage element of the test for fraud. Additionally, because we find that summary judgment was appropriate in this case, we need not address Ms. Cobb's other assignment of error.